Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence MODIFIES and AFFIRMS the Opinion and Award of the Deputy Commissioner as follows:
The Full Commission finds as fact and concludes as matters of law the following which were agreed upon by the parties in the Form 21 Agreement and the document entitled "Joint Stipulations" as
STIPULATIONS
1. The parties are subject to and bound by the North Carolina Workers' Compensation Act.
2. On April 1, 1993 plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer. At said time, an employee-employer relationship existed between plaintiff and defendant-employer.
3. The documents listed in the "Joint Stipulations" shall be admitted into evidence.
* * * * * * * *
The Full Commission adopts in part and modifies in part the findings of fact of the Deputy Commissioner and finds as follows:
FINDINGS OF FACT
1. At the time of hearing before the Deputy Commissioner, plaintiff was a 37 year old married female with one child born in August of 1992 and after her resulting six months of maternity leave had only returned to work for defendant-employer weeks prior to the injury giving rise hereto. She has a high school education and her prior work experience has involved being a portrait photographer for Olin Mills, a file clerk for an insurance company and in the health and fitness, field maintaining swimming pools and as an instructor initially and then into managing the placement of people in diet and exercise programs.
2. Although plaintiff has been released to return to her regular flight attendant's job on a full time basis by the three physicians then treating her (Drs. Sweet, Humphries and Gilbert) and was capable of performing the same job despite the permanent injury sustained on April 1, 1993 and defendant-employer had the job available; she has not returned to work since the involved injury nor has she looked for work. Plaintiff has applied for Social Security Disability benefits and claims to remain totally disabled by the same injury and unable to earn any wages in her flight attendant's job or any other employment.
3. Plaintiff's current incapacity to work is not caused by her April 1, 1993 injury, but is due to an unrelated arthritic process.
4. Plaintiff has a familial history of arthritis because her mother suffered from many of the same symptoms she does, including low back pain, severe neck pain, shoulder and arm pain and knee problems, and both were treated by the same chiropractor for those problems, Parker Adams.
5. Approximately two and a half years prior to initially seeing chiropractor Adams for such problems on November 5, 1990, plaintiff had sustained a work-related back injury resulting in her being out of work for eight weeks. Following that injury, plaintiff experienced continued problems with low back pain and occasional neck pain for which she sought chiropractic treatment.
6. In 1991 plaintiff began seeing another chiropractor, Douglas Stiffler, who subsequently provided treatment for her complaints of low back pain, cervical pain and headaches, including as part thereof restricting her from carrying in excess of twenty pounds due to her low back condition.
7. In 1992 plaintiff returned to chiropractor Adams complaining of sore feet, left leg cramps, sinus complaints, stomach trouble, left hip complaints, neck complaints, low back pain, mid back pain, flu-like symptoms, rib pain and headaches, which are many of the same symptoms she still experiences. Plaintiff was seen by chiropractor Adams on six occasions during the three-month period prior to her injury.
8. Plaintiff also had an antecedent history of developing stress-related symptoms such as cramps and sinus congestion that she claimed were the result of her father's death when seen by chiropractor Adams in April of 1992.
9. On June 14, 1987 plaintiff became employed by defendant-employer's predecessor in interest, Piedmont Airlines, as a flight attendant responsible for the safety and comfort of her passengers. While pulling a beverage cart up the aisle in route from Charlotte to JFK in New York on April 1, 1993 the plane encountered some turbulence causing plaintiff to temporarily lose her balance and to not only sustain the admittedly compensable low back and neck injuries that were subject of the Industrial Commission's prior Award herein, but also a right arm injury.
10. Despite the same injuries plaintiff was able to continue the three-day trip to which she was assigned on this occasion. She iced her back down daily and took Advil. After completing her trip plaintiff initially sought treatment from the same Virginia Beach chiropractor, Douglas Stiffler, that had begun treating her in 1991 for low back pain, cervical pain and headaches.
11. Defendant-employer then referred plaintiff to a neurosurgeon, Dr. Raymond Sweet, who began treating her on April 7, 1993 for her symptoms and he provided a conservative course of treatment primarily consisting of various medications as well as exercise and restricted her from working. Because she was dissatisfied with his treatment, on June 3, 1993 Dr. Sweet at plaintiff's request referred her for a second opinion to Dr. David Humphries, an orthopedic surgeon associated with Charlotte's Owieda Clinic, who then assumed her care. By June 2, 1993 in Dr. Sweet's opinion plaintiff had reached maximum medical improvement and/or the end of the healing period from and following her April 1, 1993 injury, at which time she retained a two percent permanent partial disability of the back from the same injury and was capable of returning to her regular flight attendant's job. He further opined that the symptoms she was then experiencing were not only out of proportion to her injury, but not related to it.
12. On June 15, 1993 plaintiff came under the care of Dr. Humphries, who also provided a continued conservative course of treatment, including as part thereof restricted activity, medication and physical therapy, as well as referred her for various diagnostic tests such as an MRI, nerve conduction studies and a Pentothal pain study, the latter of which she refused to undergo because her husband was not allowed to be present during the test. Ultimately Dr. Humphries referred her for a functional capacity evaluation to determine her work capacity and at that evaluation on January 14, 1994, plaintiff put forth submaximal effort and exhibited symptom magnification, self limitation and multiple inconsistencies despite having normal strength in her upper and lower extremities.
13. By the time of the functional capacity evaluation plaintiff had reached maximum medical improvement and/or the end of the healing period from and following her April 1, 1993 injury, at which time she retained a five percent permanent partial disability of the right arm and ten percent permanent partial disability of the back (five percent to her low back and five percent to her cervical spine) as a result of the same injury. At that time Dr. Humphries, as Dr. Sweet earlier had, released plaintiff to return to work as a flight attendant and not only was she then capable of performing the same job despite her permanent injuries, but on March 4, 1994 defendant-employer had a job available for her to resume her flight schedule.
14. At her request defendant-employer referred plaintiff for yet another second opinion to Dr. Presley Gilbert, another Charlotte orthopedic surgeon, who saw her on March 22, 1994 similarly releasing her to return to work as a flight attendant and concurred with Dr. Humphries permanent partial disability ratings. Since that time on her own plaintiff has sought further evaluation and/or treatment from multiple physicians with a wide range of specialties, including Doctors Bayliss, Roller and Adams, whose depositions were taken, as well as others, whose medical records are attached to the joint stipulation of the parties.
15. The following are among the symptoms that plaintiff claims are the result of her April 1, 1993 injury: headaches, hair loss, ear pain, eye pain, jaw pain, swollen glands, sore throat, laryngitis, chest and breast pain, joint pain, swelling and inflammation of joints, nose bleeds, dry skin, mouth and eyes, yellowing of the skin, memory loss, sensitivity to cold, neck pain and stiffness, jerking of the extremities, tingling sensations in her extremities and face, flu or virus-like symptoms, frequent fevers, decrease or loss of range of motion throughout the body, paresthesias, pain in the lymph areas, pain in the feet, severe fatigue, rashes, periodic bluish color in the hands, back pain, cervical pain, pain in the knees, wrist, fingertips, hips, shoulders, ankles and toes, numbness in the ring and little ringers, abdominal pain, diarrhea, soreness in the mouth and tongue and pain in the buttocks.
16. The constellation of incapacitating symptoms that plaintiff experiences, which have worsened since her failure to return to work in March of 1994 and are responsible for her not returning to work, are not the result of her April 1, 1993 injury; but rather, are due to a wholly unrelated arthritic process of unknown origin. Plaintiff suffered from many of her current symptoms prior to her injury.
17. Plaintiff has exaggerated the bizarre constellation of symptoms she does suffer from the arthritic process responsible for her loss of wage earning capacity based on the results of the functional capacity evaluation she underwent in January of 1994 where she gave a submaximal effort, magnified her symptoms and exhibited multiple inconsistencies. The Deputy Commissioner found in his Opinion and Award that plaintiff attended the hearing in a wheelchair, when there was no evidence that any of her medical providers prescribed one or that she even needed it.
18. Plaintiff's testimony, and other evidence, which would tend to establish that the permanent injuries she sustained on April 1, 1993 have prevented her from returning to work as a flight attendant for defendant-employer since March 4, 1994 are not accepted as credible in light of the greater weight of the contrary evidence. Defendants have rebutted the presumption that plaintiff's disability after March 4, 1994 was caused by her admittedly compensable injury.
19. As of March 4, 1994 plaintiff was no longer in need of medical treatment for the permanent injuries she sustained on April 1, 1993 and her condition has not since substantially changed. The medical treatment that she has since received since March 4, 1994 is due to the symptoms of the unrelated arthritic process that have prevented her from returning to work since March 4, 1994 and required the medical treatment she has received.
20. Because she was then capable of returning to her regular flight attendant's job and defendant-employer had the same job available, but she unjustifiably refused to accept it, plaintiff was no longer due temporary total disability benefits under the Industrial Commission's prior Award that could have been subject of the ten percent late penalty claim. In fact during this same period plaintiff was overpaid temporary total disability benefits between March 4, 1994 and June 27, 1994, which defendant-employer is entitled to a credit against the instant Award of permanent partial disability benefits.
* * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. As a result of the injury by accident giving rise hereto plaintiff retains a ten permanent partial disability of the back and five percent permanent partial disability of the right arm entitling her to 42 weeks of compensation at a rate of $284.64 per week commencing as of March 4, 1994 when she had sufficiently recovered from the same injury so as to be able to return to her regular flight attendant's job and defendant-employer then had the job available for her to resume her flight schedule, which plaintiff unjustifiably refused to do because of her claim of still being totally disabled. Despite her permanent injuries plaintiff was then capable of returning to her regular flight attendant's job as of March 4, 1994. The worsened symptoms that plaintiff has experienced since March 4, 1994 which are responsible for any disability (loss in wage earning capacity) she now has, are not due to the involved April 1, 1993 injury; but rather, the wholly unrelated arthritic process described in the above findings of fact.
2. Plaintiff's testimony and other evidence, which if believed, would tend to establish that she has remained totally disabled by her April 1, 1993 injury since March 4, 1994 are not accepted as credible in light of the greater weight of the contrary evidence. Defendants have proven that plaintiff's disability after March 4, 1994 was unrelated to her admittedly compensable injury.
3. For the reasons stated in the above findings of fact, plaintiff is not entitled to the ten percent late penalty claimed.
4. For the reasons stated in the above findings of fact plaintiff has not required any medical treatment for her admittedly compensable injuries since March 4, 1994; but rather, the treatment that she has received is for the symptoms associated with the non-related arthritic process that have prevented her from returning to work.
* * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Defendant shall pay plaintiff, on account of her ten percent permanent partial disability of the back and five percent permanent partial disability of the right arm, 42 weeks of compensation at a rate of $284.64 per week commencing as of March 4, 1994, subject to a credit for the temporary total disability benefits that were overpaid under the prior Award between March 4, 1994 and June 27, 1994 when the Industrial Commission approved defendant-employer's Form 24 Application to Stop Payment of Benefits. Such compensation having accrued, the same shall be paid in a lump sum, without commutation, subject to a reasonable attorney's fee hereinafter approved.
2. A reasonable attorney's fee in the amount of twenty-five percent of the compensation benefits due under the above Award is hereby approved for plaintiff's counsel, which shall be deducted from the same Award and forwarded directly to plaintiff's attorney.
3. Defendants shall pay the cost due this Commission, including as part thereof, an expert witness fee in the amount of $600.00 to chiropractor Adams, who appeared by way of deposition and gave expert chiropractic testimony herein as well as the expert witness fees previously awarded Doctors Roller, Bayliss and Sweet for their testimony to the extent the same has not already been paid.
 S/ ________________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ __________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ __________________ LAURA K. MAVRETIC COMMISSIONER
BSB:md